AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of:<br>Information associated with **Samsung Galaxy S8 with red and black case**, International Mobile Equipment Identity number 352053100209793, serial number RF8MB2GE3RN. | Case No.  22 - 8045MB |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

### As further described in Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

### As set forth in Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before  3-3-22  *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to any United States Magistrate Judge on criminal duty in the District of Arizona.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for  30  days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 2-17-22 @ 12:31 p.m.

*Judge's signature*

City and state: Phoenix, Arizona

Honorable John Z. Boyle, U.S. Magistrate Judge
*Printed name and title*

AO 93 (Rev. 01/09) Search and Seizure Warrant (Page 2)

## RETURN

| Case No.: | Date and Time Warrant Executed: | Copy of warrant and inventory left with: |
|---|---|---|
|  |  |  |

Inventory Made in the Presence of:

Inventory of the property taken and name of any person(s) seized:

## CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
Executing officer's signature

_____
Printed name and title

## ATTACHMENT A

*Property to be searched*

The property to be searched is one Samsung Galaxy S8 with red and black case, serial # RF8MB2GE3RN, IMEI# 352053100209793, found in Daryn Shortman's residence (SUBJECT CELLULAR TELEPHONE).   The SUBJECT CELLULAR TELEPHONE is currently located within the evidence control facility at the FBI Phoenix Division, 21711 N. 7th St., Phoenix, AZ 85024.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE and associated SIM card or removable data storage device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1.     Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE and associated SIM card or removable data storage device that relate to violations of 18 U.S.C. §§ 1153, 2241(c) and 2246(2), Offenses Committed in Indian Country: Aggravated Sexual Abuse of a Child, including but not limited to:

a.     the identification or motive of the subject and any accomplices, principals, facilitators, co-conspirators, aiders or abettors, or criminal associates;

b.     all stored electronic and wire communications and information in memory on the mobile device, including email, instant messaging, text messaging, or other communications, contact lists, images, videos, information which are evidence of the listed offenses and any other content or records on the mobile device;

c.     ledgers, receipts, invoices, and other documentary evidence that is stored electronically in the telephone's internal memory, SIM card, or other removable data storage device, which are evidence of the listed offenses, and/or which help agents identify any other person who is involved in the above listed offense;

d.     video clips and photographs digitally stored within the telephone's internal memory, SIM card, or other removable data storage device, which will constitute evidence of the above listed offenses, and/or which help agents identify any other person who is involved in the above listed offense;

e.     contextual information necessary to understand the evidence described in this attachment;

      f.     call lists to include dialed, received, and missed calls, telephone directories, text messages, voice mail messages, photographs, and any other evidence contained in internal or removable data storage;

      g.     all GPS or other location information;

      h.     any information recording the user's schedule or travel.

    2.     Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

This warrant authorizes a review of records and information seized, copied or disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the

seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of:<br>Information associated with **Samsung Galaxy S8 with**<br>red and black case, International Mobile Equipment<br>Identity number 352053100209793, serial number<br>RF8MB2GE3RN. | Case No.  22 - 8045 MB |

## APPLICATION FOR A SEARCH WARRANT

I, Michael Carter, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

### As further described in Attachment A

located in the District of Arizona, there is now concealed:

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1153, 2241(c) & 2246(2) | Aggravated Sexual Abuse of a Child |

The application is based on these facts:

### See attached Affidavit of Special Agent Michael Carter

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Kiyoko Patterson *KP*

**MICHAEL CARTER** Digitally signed by MICHAEL CARTER
Date: 2022.02.17 10:52:25 -07'00'

*Applicant's Signature*

Special Agent Michael Carter, FBI
*Printed name and title*

Sworn to before me telephonically.

Date: _2/17/22   12:31P_

*Judge's signature*

City and state: Phoenix, Arizona

Honorable John Z. Boyle, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is one Samsung Galaxy S8 with red and black case, serial # RF8MB2GE3RN, IMEI# 352053100209793, found in Daryn Shortman's residence (SUBJECT CELLULAR TELEPHONE).   The SUBJECT CELLULAR TELEPHONE is currently located within the evidence control facility at the FBI Phoenix Division, 21711 N. 7th St., Phoenix, AZ 85024.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE and associated SIM card or removable data storage device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

*Property to be seized*

1.      Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE and associated SIM card or removable data storage device that relate to violations of 18 U.S.C. §§ 1153, 2241(c) and 2246(2), Offenses Committed in Indian Country: Aggravated Sexual Abuse of a Child, including but not limited to:

a.      the identification or motive of the subject and any accomplices, principals, facilitators, co-conspirators, aiders or abettors, or criminal associates;

b.      all stored electronic and wire communications and information in memory on the mobile device, including email, instant messaging, text messaging, or other communications, contact lists, images, videos, information which are evidence of the listed offenses and any other content or records on the mobile device;

c.      ledgers, receipts, invoices, and other documentary evidence that is stored electronically in the telephone's internal memory, SIM card, or other removable data storage device, which are evidence of the listed offenses, and/or which help agents identify any other person who is involved in the above listed offense;

d.      video clips and photographs digitally stored within the telephone's internal memory, SIM card, or other removable data storage device, which will constitute evidence of the above listed offenses, and/or which help agents identify any other person who is involved in the above listed offense;

e.      contextual information necessary to understand the evidence described in this attachment;

   f.  call lists to include dialed, received, and missed calls, telephone directories, text messages, voice mail messages, photographs, and any other evidence contained in internal or removable data storage;

   g.  all GPS or other location information;

   h.  any information recording the user's schedule or travel.

  2.  Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

  As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

  This warrant authorizes a review of records and information seized, copied or disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the

seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

**ELECTRONICALLY SUBMITTED AFFIDAVIT**
**IN SUPPORT OF SEARCH WARRANT**

I, Special Agent Michael Carter, being first duly sworn, hereby depose and state as follows:

## I.    INTRODUCTION AND AGENT BACKGROUND

1.    I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephone and associated SIM card or removable data storage device described in Attachment A (SUBJECT CELLULAR TELEPHONE), and in order to extract the electronically stored information set forth in Attachment B, which represent evidence and/or instrumentalities of the criminal violations further described below.

2.    I am a Special Agent of the Federal Bureau of Investigation and have been since August 2016. I am currently assigned to the Gallup, New Mexico, Resident Agency of the Phoenix, Arizona, FBI Field Division. Prior to becoming a Special Agent with the FBI, I was a Police Officer for the Johnson City Police Department in Johnson City, Tennessee, for approximately five years and three months. Throughout my law enforcement career, I have received training on numerous investigative topics, and have experience investigating complex criminal violations of law. I have been the affiant on numerous state and federal affidavits. In the course of my duties, I am charged with investigating crimes occurring on the Navajo Nation Indian Reservation within the Federal District of Arizona. I am an investigative law enforcement officer of the United States, and I am empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18 of the United States Code.

3.    The statements contained in this Affidavit are based on information derived from my personal knowledge, training and experience, information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits, and analysis of law enforcement and publicly available databases.

4.     Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not set forth all of the relevant facts known to investigators.

## II.     BASIS FOR PROBABLE CAUSE

5.     This case involves three counts of 18 U.S.C. §§ 1153, 2241(c) and 2246(2), Offenses Committed in Indian Country: Aggravated Sexual Abuse of a Child. The events described in this document occurred within the confines of the Navajo Nation Indian Reservation, in the District of Arizona, unless otherwise described in this Affidavit.

6.     On February 3, 2021, the FBI received a referral from the Family Advocacy Center, Tsehootsooi Medical Center, which alleged the sexual abuse of Jane Doe 1 (MINOR VICTIM). The alleged perpetrator was Daryn Shortman (hereinafter SHORTMAN). The information in the referral was provided to the Family Advocacy Center by victim Jane Doe 1's mother, J.J. The referral stated that victim Jane Doe 1 had disclosed to J.J. that she had been raped by SHORTMAN from the time she was eight (8) years old until approximately March or April of 2016.

7.     On February 11, 2021, a forensic interview of victim Jane Doe 1 was conducted at the Hummingbird Child Advocacy Center in Gallup, NM. During the interview, victim Jane Doe 1 disclosed three (3) main incidents in which she had been sexually abused by SHORTMAN while she was in the second grade. Two (2) of the alleged instances of abuse occurred on the Navajo Nation Indian Reservation in Ganado, AZ, and one (1) occurred in Red River, NM. Victim Jane Doe 1 also disclosed three (3) other incidents in which SHORTMAN used his fingers to fondle her vaginal area. Two (2) of these alleged incidents occurred in Gallup, NM and one (1) occurred in Red River, NM.

8.     FBI personnel identified SHORTMAN as a Native American male born in 1989.

2

9.     On September 16, 2021, I located SHORTMAN at his known residence in Cottonwood, AZ and conducted an interview. When confronted about the allegations, SHORTMAN denied any sexual or inappropriate contact with victim Jane Doe 1 or any of J.J.'s other kids. SHORTMAN stated that he had not even seen any of J.J.'s kids in over ten (10) years.

10.    SHORTMAN further explained that he and J.J. had another child together named Jane Doe 2. Jane Doe 2 was currently ten (10) years old (as of September 2021), and J.J. had not seen Jane Doe 2 since she was born. SHORTMAN stated that he had not seen J.J. since 2011 or 2012, and he had not had any involvement with her since then. SHORTMAN and J.J.'s relationship ended when she cheated on him, and Jane Doe 2 stayed with either SHORTMAN or his sister next door. SHORTMAN believed that these allegations were because J.J. was trying to get custody of Jane Doe 2 However, SHORTMAN advised that he was not keeping J.J. from seeing Jane Doe 2.

11.    On September 30, 2021, I spoke with J.J. and discovered information that contradicted SHORTMAN'S statements that he had not had any contact with J.J. since 2011 or 2012. Specifically, I located a Facebook post from November 2015 that showed SHORTMAN and J.J. together. J.J. explained this photo was taken on a family trip to Utah, and that all five (5) kids were also on the trip. Furthermore, I discovered information that contradicted SHORTMAN'S statements that J.J. had not seen Jane Doe 2 since she was born. Specifically, J.J. showed me pictures from her cell phone that showed her with Jane Doe 2 in both 2016 and 2021.

12.    On October 27, 2021, SHORTMAN was indicted by a Grand Jury within the District of Arizona on three (3) counts of Aggravated Sexual Abuse of a Child in violation of Title 18 §§ 1153, 2241(c) and 2246(2).

13.    On November 9, 2021, FBI and Navajo Police Department personnel located and arrested SHORTMAN at his residence. Following his arrest, SHORTMAN advised

3

that he had some stuff on his cell phone that had been bothering him. Upon learning of this, I asked for consent from SHORTMAN to enter his residence and collect the device. SHORTMAN verbally consented and I went inside the house and collected his cell phone (hereinafter the SUBJECT CELLULAR TELEPHONE), which was discovered to be a Samsung Galaxy S8.

14.     SHORTMAN stated that there were photos on the SUBJECT CELLULAR TELEPHONE that were messing with his mind. SHORTMAN showed me how to access the photos on the device and explained that there were photos of something that had been bothering him inside his house. SHORTMAN explained that his house had been haunted. Things were bothering him, and he was not supposed to be talking about them. These things that were bothering him involved witchcraft. SHORTMAN described one of the pictures on the SUBJECT CELLULAR TELEPHONE which was of his son, John Doe. I viewed the picture and it appeared that the young boy had bruises on his body. I asked SHORTMAN if those were bruises on his son, and he answered "that's what I'm kinda guessing, and thinking, you know."

15.     I asked SHORTMAN for his consent to keep the phone to search it. He answered "please... if you can find what you can, yeah." Writer presented a written consent form to SHORTMAN and requested that he sign indicating his consent that he had just given verbally. SHORTMAN answered "I can't... I can't do anything till (unintelligible) cause I don't have a reason why you're doing this to me and I need a lawyer or something you know... cause I didn't do it... I didn't do anything to my baby... I love her." I confirmed that SHORTMAN wished to have a lawyer present, and he answered "yeah because I didn't, I didn't do it... I didn't do it to her and I shouldn't be going through this."

16.     The SUBJECT CELLULAR TELEPHONE was seized and placed into airplane mode. Since the time of collection, the SUBJECT CELLULAR TELEPHONE has

4

been in the possession of the FBI. The device is currently located within the evidence control facility at the FBI Phoenix Division, 21711 N. 7th St., Phoenix, AZ 85024. From my training and experience, I know that the SUBJECT CELLULAR TELEPHONE has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT CELLULAR TELEPHONE first came into FBI custody.

## III.   **ITEMS TO BE SEIZED**

17.     Based upon the facts contained in this Affidavit, I submit there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT CELLULAR TELEPHONE.

18.     SUBJECT CELLULAR TELEPHONE may contain information that shows SHORTMAN is being untruthful about having contact with J.J. and victim Jane Doe 1. Specifically, SHORTMAN'S veracity is relevant to this investigation and whether SHORTMAN had any access to victim Jane Doe 1 during the relevant timeframes and/or whether there is a motive by J.J. to make false accusations, as suggested by SHORTMAN.

19.     Based on my training, education, and experience, and discussions with other trained law enforcement personnel, I know the following:

a.     Cellular phones and other electronic devices are used to communicate with others about planning crimes, to discuss crimes that have been committed, and—in some cases—conceal crimes.

b.     Cell phones have the ability to store device information and subscriber information that can be used to uniquely identify the user of the cellular device.

c.     Cell phones have the ability to store phone numbers and associate a name with the number commonly referred to as "Contacts."

d.     Cell phones have the ability to maintain a record of incoming and outgoing calls to include the date and time of the call commonly referred to as a "Call Log."

e.     Cell phones and cellular service providers have the ability to send and receive Short Message Service (SMS) and Multimedia Messaging Service (MMS) data more commonly referred to as "Text Messages" and store this information either on the cell phone or at the service provider.

f.     Cell phones have the ability to take and record photographs, audio files, and/or videos and store this information either on the cell phone or at the service provider.

g.     Cell phones have a web browser with the ability to search for and browse web pages on the Internet and store this information either on the cell phone or at the service provider.

h.     Cell phones have the ability to record the physical location of the device (commonly referred to as GPS information) when the cellular device takes a photograph, video, or completes an incoming or outgoing phone call or text message and stores this information either on the cell phone or at the service provider.

i.     Cell phones have the ability to install applications, and these applications can be used to communicate with other devices or individuals.

j.     Cell phones have an internal memory device with the ability to maintain a record of the device information, subscriber information, contacts, call logs, text messages, photographs, videos, web browsing history, GPS information, and applications.

20.    In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, I also request permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT CELLULAR TELEPHONE.

## IV.    DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

21.    As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT

6

CELLULAR TELEPHONE. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

22.     *Probable cause.* I submit that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONE for at least the following reasons:

        a.      I know that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

        b.      Based on my knowledge, training, and experience, I know that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system (GPS) information.

        c.      Based on my knowledge, training, and experience, I know that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet.

7

Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

        d.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

       23.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONE because:

        a.     Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

        b.     As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of

session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

9

c.      A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

d.      The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process.  While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.  For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

24.      *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONE, including the use of computer-assisted scans.

25.      *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V.   **CONCLUSION**

26.   I submit there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 18 U.S.C. §§ 1153, 2241(c) and 2246(2), Offenses Committed in Indian Country: Aggravated Sexual Abuse of a Child, are likely to be found in the contents of the SUBJECT CELLULAR TELEPHONE further described in Attachment A.

MICHAEL CARTER   Digitally signed by MICHAEL CARTER
Date: 2022.02.17 10:51:23 -07'00'

Special Agent Michael Carter
Federal Bureau of Investigation

Subscribed and sworn to telephonically this 17 day of _____ FEB _____, 2022.

HONORABLE JOHN Z. BOYLE
United States Magistrate Judge

11